IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TONY CURTIS BROACH,                    :

    Plaintiff,                         :

vs.                                    :   CIVIL ACTION 04-00017-CG-B

BOB RILEY, *et al.*,                   :

    Defendants.                        :

## REPORT AND RECOMMENDATION

Tony Curtis Broach, an Alabama prison inmate proceeding pro se and *in forma pauperis*, filed the instant § 1983 complaint.  This action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants' Motion for Summary Judgment (Docs. 27, 37, 39).  Upon careful review, the undersigned finds that this action is ripe for resolution, and that no evidentiary hearing is necessary as the record is fully developed.  For the reasons stated below, the undersigned recommends that Defendants' motion be **GRANTED**.

## I.  SUMMARY OF ALLEGATIONS

Broach is an inmate at Fountain Correctional Facility ("Fountain"), where he is serving a life sentence for assault and "unlawful distribution".  On July 2, 2004, Broach filed the instant lawsuit against Defendants Bob Riley (Governor of the state of

Alabama), Donal Campbell (Alabama Prison Commissioner)[1], and Jerry
Ferrell (Fountain Correctional Center warden) alleging that each
defendant, in their individual and official capacities, violated
his Eighth and Fourteenth Amendment rights. (Doc. 1). Broach
subsequently filed an amended complaint, naming Richard Drew (a
Fountain Correctional Officer), Richard Hetrick (a Fountain
Correctional Officer Supervisor), and Kim Thomas (General Counsel,
Alabama Department of Corrections) as Defendants in this action.
Plaintiff alleges that these defendants violated his Eighth and
Fourteenth Amendment rights through their roles in maintaining an
inadequate prison law library, and by discriminating against him
on the basis of race. (Doc. 11).[2]

   Broach's primary contention is that he was removed from
Fountain's honor dormitory because of his race, black.
Specifically, Broach contends that prison officials removed him
from Fountain's honor dormitory after he received a series of
disciplinary infractions, but failed to remove white inmates who
also received disciplinary infractions while living in the honor
dormitory. (Docs. 11, 33). Broach also alleges that white inmates

_____

[1]Richard Allen was appointed commissioner for the Alabama Department of
Corrections on March 1, 2006 (Doc. 38). Because Plaintiff has filed suit
against officials of the Alabama Department of Corrections in their official
capacities, Allen has been included as a defendant in this action.

[2]Broach's first attempt to amend his complaint was filed on an outdated
court form (Doc. 4). By order dated June 9, 2004, the undersigned ordered
Broach to refile his amended complaint on the Court's current form. Broach
refiled his amended complaint on July 2, 2004. (Doc. 11).

2

receive more desirable housing assignments than black inmates, and further alleges that although white inmates comprise only 30% of Fountain's inmate population, they represent more than 80% of the inmates housed in dormitories generally considered to be more comfortable than other housing facilities at Fountain. (See Doc. 33 at 13). Broach also complains that white inmates are given preferable job assignments working inside prison facilities, while black inmates are relegated to less desirable positions, presumably those on the prison farm and other jobs conducted principally outdoors. (Doc. 33 at 13-14).

Additionally, Broach alleges that the living conditions at Fountain are unconstitutional due to inmate overcrowding, inadequate living space, inadequate staffing and security, vermin infestation, unscreened windows, deficient fire safety, deficient fire evacuation plans, and an insufficient number of bathing and toilet facilities. Broach contends that these things all contribute to an intolerable risk of physical harm to his person and to all other similarly situated inmates at Fountain Correctional Facility. (Docs. 11, 33). Broach also alleges that Fountain's law library is constitutionally deficient because its inventory of law books is outdated, damaged, and limited in scope. (Id.).

Upon service of Plaintiff's Complaint and Amended Complaint, Defendants filed Special Reports and Answers.(Docs. 27, 37)

Defendants also submitted the sworn affidavits of Defendant Richard Hetrick, Jerry Ferrell, Richard Drew and Kim Thomas. (Docs. 27, Exs. 2, 3, 4,; 37, Ex. 1).   In their filings, Defendants deny Plaintiff's allegations and assert the defenses of absolute and qualified immunity.[3]   Broach in turn filed Objections to Defendants' Special Report/Summary Judgment. (Doc. 33).   On April 16, 2007, Defendants' Special Reports and Answers were converted into a Motion for Summary Judgment (Doc. 39).   Broach was given notice of the conversion, and of his right to file a response. Furthermore, Broach was advised of the requirements of Fed.R.Civ.P. 56 and of the ramifications of a motion for summary judgment. (Doc. 39).   Subsequent thereto, Broach filed a self-styled "motion for clarification" (Doc. 40) wherein he indicated that the Court should treat his written Objections (Doc. 33) as his response to Defendants' motion for summary judgment.   On August 7, 2007, Broach

_____

[3] Plaintiff states he is suing defendants in their official and individual capacities (Doc. 11).   As state officials, Defendants are absolutely immune from suit for damages in their official capacities.   See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).   Moreover, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"   Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).   In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the Plaintiffs, show that the government official's conduct violated a constitutional right."   Dalrymple, 334 F.3d at 995 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).   Having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."   Saucier, 533 U.S. at 201.

4

filed a second "motion for clarification" (Doc. 41), wherein he requested the status of these proceedings.

## II.   SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 (c) provides that summary judgment shall be granted:

> if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P.56 (c).  A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." Id.; accord, Tipton v. Bergrohr GMBH-Siegen, 965 F. 2d 994, 998 (11th Cir. 1992), cert. denied, 507 U.S. 911, 113 S.Ct. 1259, 122 L. Ed. 2d 657 (1993).   The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. V. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986).  Once the movant satisfies its initial burden under Rule 56( c), the plaintiff is required to produce some evidence to support his constitutional claims.   He must "go beyond the pleadings and...designate 'specific facts showing that there is a genuine

issue for trial.'" Id. at 324.   A plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment.  Harris v. Ostrout, 65 F. 3d 912, 916 (11th Cir. 1995).   Consequently, when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" summary judgment is due to be granted in favor of the moving party.   Celotex, 477 U.S. at 322.   Where all the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. Id.; Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in the light most favorable to the non-moving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a material fact in order to avert summary judgment.  Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990).  The record in this case demonstrates that Broach has failed to establish that there is any genuine issue as to any material facts sufficient to avert judgment in favor of Defendants.

**III.  DISCUSSION**

In order to state a claim under 42 U.S.C. § 1983, a plaintiff

6

must establish that: "(1) . . . the conduct complained of was committed by a person acting under color of state law; and (2). . . . this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-31, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986).  The element requiring a deprivation of a right based on the Constitution or on a federal law is satisfied by a plaintiff establishing that he was deprived of a right inherent in the Constitution or in a federal law or of a liberty interest created by the state that is protected by the due process clause. Meachum v. Fano, 427 U.S. 215, 223-29, 96 S.Ct. 2532, 2538-40, 49 L.Ed.2d 451 (1976); accord Sandin v. Conner, 515 U.S. 472, 487, 115 S.Ct. 2293, 2302, 132 L.Ed.2d 418 (1995).

A.   **EQUAL PROTECTION VIOLATION**

In the instant case, Broach asserts that Defendants violated his 14th Amendment right to equal protection when they removed him from the Fountain honor dormitory on the basis of a disciplinary infraction, but failed to take similar action against similarly situated white inmates when they received disciplinary infractions. (Doc. 11).  The Equal Protection Clause provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U .S. Const. Amend. XIV, §1.   This

7

provision does not mandate identical treatment for each individual; rather, it requires that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 87 L.Ed 2d 313, 105 S. Ct. 3249 (1985). In order to defeat Defendants' properly supported motion, Broach must demonstrate that Defendants engaged in purposeful discrimination. See, e.g., Washington v. Davis, 426 U.S. 229, 239-45, 96 S.Ct. 2040, 2047-50, 48 L.Ed.2d 597 (1976); Mencer v. Hammonds, 134 F.3d 1066, 1070 (11 Cir.), cert. denied, 525 U.S. 982, 119 S.Ct. 445, 142 L.Ed.2d 399 (1998); Parks v. City of Warner Robins, Georgia, 43 F.3d 609, 616 (11 Cir.1995). "[T]he requirement of discriminatory motive 'implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of' not merely 'in spite of,' its adverse effects upon an identifiable group." In re: Employment Discrimination Litigation against the State of Alabama, 198 F.3d 1305, 1319 (11 Cir.1999)(citing Personnel Adm'r v. Feeney, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979)(internal citations omitted)). Thus, Broach must demonstrate that similarly situated inmates were not similarly treated and that prison officials engaged in invidious discrimination based on Plaintiff's race. Thomas v. Georgia State Bd. Of Pardons & Paroles, 881 F. 2d 1032, 1034 n.3 (11th Cir. 1989)(addressing equal protection claims

brought under 42 U.S.C. § 1983 attacking parole decisions.)

In this action, Broach alleges that on or about November 19, 2003, Defendant Drew ordered him to vacate Fountain's honor dormitory after he received a disciplinary infraction. According to Broach, Defendant Drew[4], in his capacity as supervisor for "certain living areas" of Fountain, and Defendant Hetrick, in his official capacity as an administrative supervisor, along with Defendant Ferrell, made race the primary factor in determining inmate housing and job assignments. (Doc. 11 at 2, Doc. 33 at 12). In response to Plaintiff's Complaint, Defendants submitted several affidavits, including the sworn testimony of Defendant Hetrick. (Doc. 27, Ex. 3).  In his affidavit, Defendant Hetrick avers that Dorm Eight is considered one of Fountain's Honor Dorms. Hetrick further avers that as an Honors Dorm inmate, Broach was aware of the requirement that he had to remain free of disciplinary infractions in order to live in the Dorm, and was further aware that inmates receiving disciplinary action would be removed from Dorm Eight. (Id.).  According to Hetrick, Broach was removed from Dorm Eight after receiving disciplinary actions on November 10, 2003, and November 19, 2003.  Hetrick avers that all inmates, regardless of color, are removed from all Honor Dorms upon receipt

---

[4]Defendant Drew states in his affidavit that he was employed as correctional officer at Fountain, and that while his duties did include serving as recreation director at the facility, he did not have supervisory authority over the dormitory that is the subject of Broach's complaint.

of disciplinary action.(Id.).

Plaintiff has failed to come forth with probative evidence sufficient to establish a genuine issue of material fact on this issue.[5]  First of all, Broach does not dispute that he received disciplinary infractions while residing in the honor dormitory. Indeed, the undisputed evidence establishes that Broach was the subject of disciplinary action on November 10, 2003, when he was cited for indecent exposure in the yard of the Honor Dormitory. (Doc. 27, Ex. A).  Broach was also the subject of disciplinary action on November 19, 2003, when he was disciplined for creating a safety and security hazard by posting handwritten signs labeling a fellow inmate a "snitch".  Broach does not contest the validity of the disciplinary reports against him, and does not argue that Defendants acted inappropriately in removing him from the Honor Dormitory upon issuance of these disciplinary reports.

Secondly, while Broach has listed the names of five individuals whom he contends are white inmates who were disciplined yet not removed from the Honors Dormitory, he has failed to come forth with any probative evidence.  He has offered no sworn testimony or other probative evidence that demonstrates that he is in fact similarly situated to the individuals with whom he seeks to compare himself, or that Defendants' actions were motivated by

---

[5]The only material submitted by Broach that is competent evidence to support his claims is his complaint, which was signed under penalty of perjury.  Because it was signed under penalty of perjury, it is being treated by the Court as an affidavit.  Dickinson v. Wainwright, 626 F.2d 1184, 1186 (5th Cir. 1980).

race.[6]  Moreover, Broach's submission of a copy of the "Fountain
Correctional Center Bed Assignment Roster" as evidence of racial
disparities in housing and job assignments at Fountain does not
suffice. (Doc. 33, Ex. O).  This document, standing alone, neither
demonstrates   nor   suggests   the   existence   of   purposeful
discrimination in the distribution of housing and job assignments
at Fountain.  Accordingly, based upon a review of the record in
this matter, and viewing all evidence contained therein in a light
most favorable to Broach, the undersigned finds that Broach has
failed to come forth with probative evidence sufficient to
establish a genuine issue of material fact with respect to his
claim that Defendants discriminated against him on account of his
race.  Thus, Broach's Equal Protection Claim against Defendants is
due to be dismissed.

    B. CONDITIONS OF CONFINEMENT CLAIMS

    In order to state a claim under 42 U.S.C. § 1983, a plaintiff
must establish that "(1)..the conduct complained of was committed
by a person acting under color of state law; and (2)...this conduct
deprived a person of rights, privileges, or immunities secured by
the Constitution or laws of the United States." Parratt v. Taylor,
451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981),

-----

    [6] Defendant Ferrell has submitted a sworn affidavit wherein he avers
that inmates are assigned jobs, duties, details and program recommendations
based on established criteria, institutional needs, the inmate's ability or
inability as it relates to his physical or mental ability, his
classification/custody designation and his personal conduct record.  Race is
not a factor in any assignment, recommendation or non-recommendation. (Doc.
27, Ex. 4).

*overruled on other grounds by* <u>Daniels v. Williams</u>, 474 U.S. 327, 330-31, 106 S. Ct. 662, 664, 88 L. Ed. 2d 662 (1986).

As noted supra, Broach alleges that living conditions at Fountain violate his rights under the Eighth and Fourteenth Amendments[7] to be free from cruel and unusual punishment. The Eighth Amendment does not require that places of incarceration be comfortable. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). However, it does not tolerate inhumane ones. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). A prison official may violate the Eighth Amendment by denying an inmate humane conditions of confinement if he is deliberately indifferent to a substantial risk of serious harm[8]. <u>Id</u>. at 837. This requires proof that the prison official "knew that the inmate faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." <u>Id</u>. at 847. In order for a condition of confinement to violate the Eighth Amendment, the condition must be "extreme". <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1289 (11th Cir. 2004).

While an inmate "need not await a tragic event" before seeking

---

[7]The Eighth Amendment applies to the states through the Fourteenth Amendment. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 344-45, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981).

[8]A valid Eighth Amendment claim of this kind has two components: (1) an "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment, <u>Hudson v. McMillian</u>, 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992), and (2) a subjective component which requires the inmate to prove that the prison official was "deliberately indifferent" to prisoner health or safety. <u>Farmer v. Brennan</u>, 511 U.S. at 837.

relief, he must at the very least show that the complained-of-condition "poses an unreasonable risk of serious damage to his future health or safety." Id.  Moreover, "the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to the challenged condition of confinement." Id.  It also requires courts to assess "whether society considers the risk that the prisoner complains to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk."  Id.  Put differently, the prisoner must "show that the risk of which he complains is not one that today's society chooses to tolerate." Id.

Broach alleges that Fountain is overcrowded, and has inadequate living space, inadequate staffing and security, vermin infestation (causing spider bites), deficient fire safety and fire evacuation plans, and insufficient bathing and toilet facilities. (Doc. 11, Doc.33).  Plaintiff has proffered no probative evidence in support of his claims.  Defendants, on the other hand, have not only disputed Plaintiff's claims, but have offered evidence in support.  The sworn affidavit of Jerry Ferrell, who serves as warden of the facility, acknowledges that the facility is overcrowded, but denies that the inmates are living in inhumane conditions. (Doc. 27, Ex. 4).  Ferrell avers that smoke detectors are present inside inmate dorms and that fire hoses and water hook-ups have been installed near inmate housing areas.  Ferrell further

13

avers that a fire evaluation plan, with primary and secondary routes are in place, and that fire drills are conducted on a regular basis and that the dorms are evacuated within 20-25 minutes. (Id.).  In addition, Corrections officers are assigned to each dorm and conduct random searches of inmates and inmate living areas during each shift. (Id).  Security is augmented by the use of metal detection devices in the vocational area and by physical searches of inmates upon their return to the facility.  Moreover, while there is a staffing shortage, both voluntary and mandatory overtime are used to ensure that staffing levels at Fountain are adequate to ensure the health and safety of all inmates. (Id.).

Additionally, the undisputed record evidence reflects that although Fountain houses more inmates than it was initially designed to accommodate, each inmate is provided with an individually assigned bed and storage area, and inmates have access to showers, toilets, sinks and urinals which are available and serviceable within their work and living areas.  Additionally, the housing areas are cleaned and regularly treated for pests, including spiders. (Id.).

Finally, Broach has alleged that due to the actions of Defendants Hetrick and Thomas, Fountain's law library is constitutionally inadequate because it lacks certain legal texts, and has space for only a limited number of inmates at any given time.  Broach also alleges that he has suffered "isolated episodes of interference" with his right to access Fountain's law library,

14

presumably during his stints in Fountain's segregation unit. (Doc. 33 at 11).   To guarantee prisoners their constitutional right of access to the courts, prison authorities are required to provide prisoners with adequate law libraries or legally trained assistance to prepare and file meaningful legal papers. Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). The primary focus is to "protect the ability of an inmate to prepare a petition or complaint, [and] it is irrelevant" that the state provides for the appointment of counsel in some proceedings. Id. at 828 n. 17, 97 S.Ct. at 1498 n. 17 (internal quotations and citation omitted). The required prison law library must supply the tools and, thus, "a capability" "that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." Lewis v. Casey, 518 U.S. 343, 355-56, 116 S.Ct. 2174, 2182, 135 L.Ed.2d 606 (1996).

An inmate who shows that a desired actionable challenge to his sentence was "lost or rejected ... because th[e] capability of filing suit [w]as not ... provided, ... demonstrates that the State has failed to furnish adequate law libraries or adequate assistance from persons trained in the law." Id., 116 S.Ct. at 2182 (internal punctuation and citation omitted).  Broach alleges only that his ability to use the law library has been limited by the allegedly small size and inadequate supply of books in Fountains law library, but not that he has lost the ability to file suit to vindicate his rights because of library conditions.  Indeed, Broach was able to

15

file the instant complaint with multiple citations to legal authority. Defendants also provided the affidavit of Defendant Kim Thomas, who avers that the law library at Fountain is equipped with two computers and legal materials provided in DVD format by Lexis Nexis. (Doc. 37, Ex. 1). According to Thomas, the DVDs are updated on a quarterly basis and include various Alabama state publications, as well as Federal Publications, including the Federal Rules of criminal and civil Procedure. Thomas further avers that in addition to these materials, several printed publications are also available, and that while inmates will sometimes damage these materials, there is a procedure in place for obtaining a copy of the damaged material.(Id.). In light of the record before the Court, Broach's conclusory allegations are not sufficient to defeat summary judgment on this claim.

Accordingly, based on the record before the Court, the undersigned finds that Broach has failed to come forth with probative evidence sufficient to create a genuine issue of material fact regarding the conditions at Fountain. Broach fails to establish that the conditions prevailing at Fountain have denied him the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain. Wilson, 501 U.S. at 298-299; Rhodes, 452 U.S. at 347. Furthermore, Broach has failed to demonstrate any deliberate indifference or reckless disregard by the named defendants with respect to his health or safety. Specifically, Broach has failed to identify any

16

particular incident or condition from which the defendants could infer that a substantial risk of serious harm existed. Thus, Defendants are entitled to summary judgment with respect to this claim. See <u>McElligott v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir.1999).

<u>CONCLUSION</u>

Based on the foregoing, the Court concludes that Defendants are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be **GRANTED** and that the entirety of Plaintiff's Complaint against Defendants be **DISMISSED** with prejudice.

The attached sheet contains important information regarding objections to the Report and Recommendation.

**DONE** this **11th** day of **September 2007**.


                              **s/ SONJA F. BIVINS**
                         **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1.   **<u>Objection</u>**.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.   <u>See</u> 28 U.S.C. § 636(b)(1)(c); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **<u>Opposing party's response to the objection.</u>**   Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **<u>Transcript (applicable where proceedings tape recorded)</u>**. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.   Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.